T.C. Memo. 2004-47

UNITED STATES TAX COURT

JOSEPH TAMBERELLA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13879-01.                    Filed March 3, 2004.

<u>Elizabeth Ann Maresca</u>, Tatia Barnes, and Yael Neiman, for
petitioner.

<u>William C. Bogardus</u>, for respondent.

MEMORANDUM OPINION

PAJAK, <u>Special Trial Judge</u>:  Respondent determined a
deficiency of $26,589 in petitioner's 1997 Federal income tax,
together with an addition to tax of $6,714.89 under section
6651(a)(1), and an accuracy-related penalty of $5,371.80 under
section 6662(a).  Unless otherwise indicated, section references
are to the Internal Revenue Code in effect for the year in issue.

The issues for decision are:  (1) Whether under section 104 petitioner may exclude from gross income $89,840 in proceeds from a legal settlement; (2) whether petitioner is liable for the section 6651(a)(1) addition to tax for failure to file on time a Federal income tax return for 1997; and (3) whether petitioner is liable for the accuracy-related penalty under section 6662(a).

Some of the facts in this case have been stipulated and are so found.  Petitioner resided in Deer Park, New York, at the time he filed his petition.

From 1994 to 1996, petitioner worked for a bus contractor, ATC-Vancom of Nevada Limited Partnership, Inc. (ATC), in Laughlin, Nevada.  Mr. Shawn Brophy was petitioner's supervisor at ATC.  In 1996, petitioner was living with Diane Macarino, her two sons from a prior marriage, and petitioner and Ms. Macarino's son, Joseph.  Petitioner invited Mr. Brophy to live on petitioner's property and Mr. Brophy stayed about 2 months.  Then, Mr. Brophy moved Ms. Macarino and all three children out of petitioner's home and took them with him.  Obviously, petitioner was concerned and upset about this turn of events.  Petitioner's father suffered a stroke.  About that time, petitioner was diagnosed with and treated for mental illness and high blood pressure.  Petitioner was hospitalized for these conditions for approximately 10 days in 1996.

Petitioner was terminated from his ATC employment in 1996.

Petitioner claimed that he was terminated because he reported to ATC, Nevada officials, and the public Mr. Brophy's personal use of a Nevada vehicle to move Ms. Macarino, petitioner's son, and the other two children out of petitioner's home. Petitioner believed that Mr. Brophy's use of the vehicle was illegal. ATC claimed that petitioner was terminated for job abandonment due to petitioner's failure to report for work for more than 2 weeks without notifying his supervisors.

In 1996, petitioner prepared and filed a complaint in the Clark County District Court, Nevada, against ATC alleging negligence, breach of contract, breach of public policy, and wrongful discharge. That case was submitted to nonbinding arbitration. Petitioner prepared and submitted a prearbitration memorandum. Petitioner also conducted cross-examination during the hearing. Petitioner sought reinstatement to his former position with ATC, but he was not reinstated. Petitioner rejected the arbitration award.

In 1997, petitioner entered into a Confidential Settlement Agreement (settlement agreement) with ATC. Pursuant to the settlement agreement, petitioner received from ATC two payments totaling $115,000. The settlement agreement specifies that the first payment, in the amount of $25,160, represents back wages. This amount is not in issue here. The settlement agreement specifies that the second payment, in the amount of $89,840,

represents "a litigation settlement of [petitioner's] claims against [ATC]." This is the amount in issue. The settlement agreement provides that petitioner "agrees to waive any right to reinstatement". The settlement agreement specifies that the parties agree that the $89,840 will be reported by ATC on a "Form 1099" and that petitioner "acknowledges that some or all of the monies" may be considered taxable.

The $89,840 was reported by ATC to the Internal Revenue Service on a Form 1099-MISC, Miscellaneous Income, as nonemployee compensation. Petitioner did not report this amount on his 1997 Federal income tax return.

Petitioner contends that the $89,840 is excludable from his income because such amount constitutes "proceeds from a lawsuit settlement petitioner received from a former employer for medical conditions of a permanent and dibilating [sic] nature."

Section 7491(a) does not affect the outcome because petitioner's liability for the deficiency is decided on the preponderance of the evidence.

Section 61(a) provides that gross income includes all income from whatever source derived unless excludable by a specific provision of the Code. Section 104(a)(2) excludes from gross income amounts received in damages, by suit or settlement, for personal physical injuries or physical sickness. The nature of the claim underlying the damage award is the focus for

determining whether damages received are excludable under section 104(a)(2).  United States v. Burke, 504 U.S. 229, 237 (1992).  The underlying claim giving rise to the recovery must be "based upon tort or tort type rights" and the damages must have been received "on account of personal injuries or sickness".  Commissioner v. Schleier, 515 U.S. 323, 336 (1995).  Section 104(a)(2) was amended in 1996, effective for amounts received after August 20, 1996, to require that personal injury or sickness be physical in nature; this amendment does not otherwise change the analysis under Commissioner v. Schleier, supra.  Prasil v. Commissioner, T.C. Memo. 2003-100, n.10.  We note that for purposes of section 104(a)(2), emotional distress shall not be treated as a physical injury or physical sickness except for any damages that are not in excess of the amount paid for medical care attributable to such emotional distress.  Sec. 104(a).

Petitioner's complaint alleged four causes of action, negligence, breach of contract, breach of public policy, and wrongful discharge.  Of these four causes of action, only negligence could satisfy the second prong of the Commissioner v. Schleier, supra, analysis, which requires that damages must have been received "on account of personal [physical] injury or [physical] sickness".  The settlement agreement did not allocate any portion of the settlement amount in issue to personal physical injury or physical sickness.  Rather, the settlement

agreement expressly provided that the $89,840 would be reported to the Internal Revenue Service on a Form 1099 and that some or all of that amount may be taxable. In the settlement agreement, the parties characterized the $89,840 payment as "a litigation settlement of [petitioner's] claims against [ATC]."

Where a settlement agreement is silent with respect to precisely what the settlement amount is paid to settle, the intent of the payor is examined. Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo 1964-33 (citing Agar v. Commissioner, 290 F.2d 283 (2d Cir. 1961), affg. per curiam T.C. Memo. 1960-21). This examination is made based on all the surrounding facts and circumstances. Robinson v. Commissioner, 102 T.C. 116, 127 (1994), affd. in part and revd. in part on another ground 70 F.3d 34 (5th Cir. 1995).

There is no question that petitioner provided ATC's attorney with his 1996 medical records concerning his hospitalization for mental illness and high blood pressure. But there is nothing in the record that establishes that ATC intended that any portion of the $89,840 settlement amount paid to petitioner was on account of personal physical injury or physical sickness. Rather, the record reveals that this amount reflects petitioner and ATC's settlement discussions about the amount to be paid to petitioner to waive reinstatement of employment. A letter, written by ATC's attorney to petitioner, states in pertinent part:

You stated that you would be willing to settle this matter for the sum of $45,000.00 including reinstatement to your former position of employment. You stated that $45,000.00 figure was comprised of your estimate of your lost wages to date as well as the amount awarded by the arbitrator. At my suggestion, you also made an alternative settlement proposal without reinstatement. Specifically, you proposed a resolution of this matter for $150,000.00 which would not include reinstatement of your employment.

Ultimately, petitioner and ATC settled for $115,000, of which $25,160 represents back wages not in issue here. It appears that the remaining $89,840 represents the amount of the arbitrator's award, plus payment for petitioner's waiver of any right to reinstatement to his former position. The settlement agreement expressly provides that petitioner "agrees to waive any rights to reinstatement or to apply for re-employment with [ATC]". Petitioner presented no evidence other than his own testimony that he "was physically injured" by ATC. It is well established that this Court is not bound to accept a taxpayer's self-serving, unverified, and undocumented testimony. Shea v. Commissioner, 112 T.C. 183, 189 (1999); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Our examination of the surrounding facts and circumstances leads us to conclude that ATC did not intend that any portion of the $89,840 be allocated to personal physical injury or physical sickness.

On this record, we sustain respondent's determination.

We next consider whether petitioner is liable for an addition to tax under section 6651(a)(1) and the accuracy-related

penalty under section 6662(a).  Section 7491(c) places the burden of production on respondent with respect to the liability of any individual for any penalty, addition to tax, or additional amount (penalties).  Higbee v. Commissioner, 116 T.C. 438, 446 (2001). To meet his burden of production, respondent must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty.  Id.  The burden of proof remains on the taxpayer with respect to issues such as reasonable cause or substantial authority.  Id.

Section 6651(a)(1) imposes an addition to tax for failure to timely file a tax return, unless failure to do so is due to reasonable cause and not willful neglect.  The taxpayer must prove both reasonable cause and lack of willful neglect.  Crocker v. Commissioner, 92 T.C. 899, 912 (1989).  "Reasonable cause" requires the taxpayer to demonstrate that he exercised ordinary business care and prudence.  United States v. Boyle, 469 U.S. 241, 246 (1985).  Willful neglect is defined as a "conscious, intentional failure or reckless indifference."  Id. at 245.

Petitioner admitted that he did not file a tax return for taxable year 1997 until January 1999, when he received correspondence from respondent requesting that he file a tax return for 1997.  Because petitioner did not file his 1997 tax return until January 1999, respondent has satisfied his burden of production with respect to the addition to tax under section

6651(a)(1).  Higbee v. Commissioner, supra at 447.  Petitioner stated that he did not timely file a 1997 tax return because taxes were withheld from the back wages portion of the settlement payment.  However, the settlement agreement expressly provided that some or all of the $89,840 may be taxable and that ATC would issue a Form 1099 for that amount.

Although on two occasions petitioner was treated for mental illness, nothing in the record suggests that he was so incapacitated during the period in issue as to render him incapable of exercising ordinary business care and prudence.  Petitioner was hospitalized for diagnosis and treatment of his mental illness for 10 days in early 1996.  Petitioner also was hospitalized for mental illness for approximately 5 weeks in 2002.  There is no evidence that petitioner had any mental problems during the intervening time period.  In fact, during that time period, petitioner brought suit against ATC, admittedly prepared the complaint, prepared a prearbitration memorandum, conducted cross-examination, and negotiated a settlement of $115,000 with ATC.  We conclude that petitioner is liable for the addition to tax under section 6651(a)(1) for taxable year 1997.

Section 6662(a) imposes a 20-percent penalty on the portion of any underpayment of tax attributable to negligence or disregard of rules or regulations.  Sec. 6662(b)(1).  Negligence is any failure to make a reasonable attempt to comply with the

provisions of the internal revenue laws.  Sec. 6662(c).

Moreover, negligence is the failure to exercise due care or

failure to do what a reasonable and prudent person would do under

the circumstances.  Neely v. Commissioner, 85 T.C. 934, 947

(1985).  Disregard includes any careless, reckless, or

intentional disregard of rules or regulations.  Sec. 6662(c);

sec. 1.6662-3(b)(2), Income Tax Regs.  No penalty will be imposed

with respect to any portion of any underpayment if it is shown

that there was a reasonable cause for such portion and that the

taxpayer acted in good faith with respect to such portion.  Sec.

6664(c).

For the same reasons that petitioner's mental illness does

not excuse him from the addition to tax under section 6651(a)(1),

his mental illness does not excuse him from the accuracy-related

penalty under section 6662(a).  In addition, petitioner was on

notice by the settlement agreement and the Form 1099 issued by

ATC that some or all of the $89,840 was subject to tax.  Based

upon petitioner's settlement discussions with ATC, there was no

reason for petitioner to believe that any of this amount was

excludable from his income.  Petitioner did not seek professional

advice as to whether any of the $89,840 was taxable and

intentionally omitted that amount from the income tax return he

filed at the request of the Internal Revenue Service.  Respondent

has satisfied his burden of production with respect to the

accuracy-related penalty under section 6662(a).  Petitioner has not shown reasonable cause for his failure to report the $89,840. We conclude that petitioner is liable for the accuracy-related penalty under section 6662(a) as determined by respondent.

We have considered petitioner's remaining arguments and conclude that they are either irrelevant or without merit.

<u>Decision will be entered</u>
<u>for respondent</u>.