T.C. Summary Opinion 2007-146

UNITED STATES TAX COURT

KENNETH FRANK DILLER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2668-06S.                    Filed August 22, 2007.

Kenneth Frank Diller, pro se.

Matthew A. Houtsma, for respondent.

DEAN, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined for 2002 a deficiency in petitioner's Federal income tax of $8,877, an addition to tax under section 6651(a)(1) of $1,650, an addition to tax under section 6651(a)(2) of $1,063, and an addition to tax under section 6654(a) of $239. The issues for decision are whether petitioner: (1) May exclude under section 104(a)(2) certain damages received, (2) paid unreported business expenses, (3) is liable for the failure to timely file addition to tax under section 6651(a)(1), (4) is liable for the failure to pay timely addition to tax under section 6651(a)(2), and (5) is liable under section 6654(a) for the addition to tax for failure to pay estimated tax.

## Background

The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. At the time the petition in this case was filed, petitioner resided in Greeley, Colorado.

For several years, until his independent sales contract was terminated in 1999, petitioner worked for Cronatron Welding Systems, Inc. (Welding). Petitioner then began working with Gard Specialists Co. (Gard). Gard was and is in the business of selling nuts, bolts, screws, traps, drills, grinding discs, and chemicals for maintenance operations. Petitioner continues to work for Gard.

Petitioner filed a claim of age discrimination against Welding. In 2002, he received $53,000 to settle his discrimination claim of which $19,055.58 was paid directly to his attorney. The parties agree that no part of the settlement paid to petitioner by Welding was compensation for physical injury or physical sickness, and petitioner made no allegation that the damages were paid for medical care attributable to emotional distress.

The parties also agree that petitioner received in 2002: (1) At least $481 in self-employment income, (2) at least $155 in taxable interest, of which $19 was withheld, (3) $202 of dividends, of which $23 was withheld, (4) a gain of $23 from the sale of stocks and bonds, and (5) rental income of $5,744.23 and rental expenses of $4,518.46.

The parties agree that petitioner filed a request for an extension to file his 2002 Federal income tax return along with a remittance of $1,500 on or before April 15, 2003. But the parties also agree that petitioner has never filed a Federal income tax return for 2002. The Internal Revenue Service (IRS) made a return for him under section 6020(b) for 2002. The IRS has no record of petitioner's having filed a Federal income tax return for 2001.

During preparation for trial, petitioner informed respondent that he had a business for which he paid significant business

expenses during 2002. Petitioner submitted to respondent's counsel on the morning of trial a Form 1040, U.S. Individual Income Tax Return, for 2002, with an attached Schedule C, Profit or Loss From Business, under the name KD Fabricating. The Schedule C reported gross receipts of $53,826, total expenses of $49,418 and a net profit of $4,408. Petitioner included in the gross income reported on Schedule C the recovery from his lawsuit against Welding, the proceeds from the sale of a vehicle, and other items. Similarly, the expenses reported on Schedule C include items from various sources.

## Discussion

The Commissioner's deficiency determinations are presumed correct, and taxpayers generally have the burden of proving that the determinations are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under certain circumstances, however, section 7491(a) may shift the burden to the Commissioner with respect to a factual issue affecting liability for tax. Petitioner did not present evidence or argument that he satisfied the requirements of section 7491(a), and therefore, the burden of proof does not shift to respondent.

Taxpayers are required, under section 61(a), to include in gross income "all income from whatever source derived" unless such income has been specifically excepted from inclusion. See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955)

(Congress's intent under section 61(a) was to tax income unless specifically excluded). Exclusions to section 61(a) must be narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995) (citing United States v. Burke, 504 U.S. 229, 233 (1992)).

The parties have agreed on the amounts of various income items received by petitioner in 2002 but not to the taxability of petitioner's recovery of damages for discrimination or to the treatment of his payment of attorney's fees associated with the recovery.

Exclusion of Certain "Damages"

Section 104(a)(2) allows taxpayers to exclude from income "the amount of any damages (other than punitive damages) received (whether by suit or agreement * * *) on account of personal physical injuries or physical sickness". The flush language of section 104(a) specifies that "emotional distress shall not be treated as a physical injury or physical sickness." But the exclusion from gross income does apply to the amount of damages received for any medical care attributable to emotional distress. Sec. 104(a).

Treasury regulations provide that the term "damages" means amounts received (aside from workmen's compensation) through litigation or settlement of an action that is based on "tort or tort type rights". Sec. 1.104-1(c), Income Tax Regs.

The Supreme Court in <u>Commissioner v. Schleier</u>, <u>supra</u>, held that damages are excludable from income under section 104(a)(2) if they meet a two-pronged test. First, the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is "based upon tort or tort type rights", and second, the taxpayer must show that the damages were received "on account of personal injuries or sickness." <u>Commissioner v. Schleier</u>, <u>supra</u> at 335-337. <u>Both requirements</u> must be satisfied for the damages to be excluded from income. <u>Id.</u> at 333.

Section 104(a)(2) was amended in 1996 to include the requirement that damages be received for <u>physical</u> injuries or sickness. Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605(a), 110 Stat. 1838. However, this does not alter the analysis of <u>Schleier</u>. See <u>Tamberella v. Commissioner</u>, T.C. Memo. 2004-47, affd. 139 Fed. Appx. 319, 321 (2d Cir. 2005).

None of the underlying documentation describing the nature of the settlement is in the record. The parties have agreed, however, that no part of the settlement paid to petitioner was compensation for physical injury or physical sickness, and petitioner has made no allegation that the damages were paid for medical care attributable to emotional distress.

Therefore, petitioner's recovery is not exempted from inclusion in gross income under section 61. Because petitioner's recovery constitutes income, his income includes the portion of

the recovery paid to his attorney for his representation. Commissioner v. Banks, 543 U.S. 426, 429 (2005). Petitioner, however, may deduct the attorney's fees as a miscellaneous itemized deduction under sections 67 and 162, subject to the alternative minimum tax computations under sections 55 and 56. See Commissioner v. Banks, supra at 432.

Petitioner's Business Deductions

During preparation for trial, petitioner informed respondent that he had a business for which he paid significant business expenses during 2002. Respondent contends that petitioner has not shown that his activity, if any, was actually conducted for profit or as a business, but if it was, petitioner has not adequately substantiated his expenses from the activity. Before examining the issue of substantiation, consideration of petitioner's evidence of his carrying on a trade or business is appropriate.

Deductions are allowed under section 162 for the ordinary and necessary expenses of carrying on an activity that constitutes the taxpayer's trade or business. Deductions are allowed under section 212(1) and (2) for the ordinary and necessary expenses paid or incurred in connection with an activity engaged in for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

With respect to either section, however, the taxpayer must demonstrate a profit objective for the activity in order to deduct associated expenses.  See Jasionowski v. Commissioner, 66 T.C. 312, 320-322 (1976); sec. 1.183-2(a), Income Tax Regs.  The profit standards applicable for section 212 are the same as those used for section 162.  See Agro Sci. Co. v. Commissioner, 934 F.2d 573, 576 (5th Cir. 1991), affg. T.C. Memo. 1989-687; Antonides v. Commissioner, 893 F.2d 656, 659 (4th Cir. 1990), affg. 91 T.C. 686 (1988); Allen v. Commissioner, 72 T.C. 28, 33 (1979); Rand v. Commissioner, 34 T.C. 1146, 1149 (1960).

Section 1.183-2(b), Income Tax Regs., sets forth nine nonexclusive factors that should be considered in determining whether a taxpayer is engaged in a venture with a profit objective.

In order to show that he was engaged in a trade or business, petitioner must show not only that his primary purpose for engaging in the activity was for income or profit but also that he engaged in the activity with "continuity and regularity".  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).

Respondent's counsel represented to the Court that he was not advised by petitioner of the purported business until 10 days before trial and that petitioner did not provide him with any evidence of business income and expenses.

Petitioner responded by offering into evidence a copy of a simple "letterhead" and a blank "invoice", each of which appeared to have been generated by a personal computer. Petitioner also provided a checking account statement dated January 24, 2002, in the name of "KD Fabricating Kenneth F. Diller". Petitioner testified that KD Fabricating was in the business of selling welding maintenance and repair products, a business similar to that of Welding at the time he worked for them.

Petitioner sent copies of the letterhead, invoice, and checking account statement to respondent. In the cover letter dated October 15, 2006 (on KD Fabricating, Co. "letterhead"), transmitting the documents, petitioner stated that the documents show that KD Fabricating[1] is "the name under which I transact business currently and have for the last ten to twelve years". At trial, however, petitioner testified that he started KD Fabricating in January of 2002. And he testified that his negative replies to questions about self-employment on his February 6, 2006, Application For Waiver Of Filing Fee And Affidavit (waiver), were because he was not conducting business for KD Fabricating as of that date.[2]

---

[1]Petitioner offered evidence that he also owned, beginning in 2000, an interest in and was president of a now defunct corporate entity named KD Technologies.

[2]Question 3 of the waiver asks if you "have * * * received any money from" self-employment "in the last 12 months".

(continued...)

This case was tried on October 23, 2006. On October 20, 2006, petitioner had provided to respondent's counsel a computer-generated chart that purports to list for 2002 the "W2 & 1099 & Miscellaneous" income for Kenneth F. Diller. There is no listing for KD Fabricating on the chart provided to respondent's counsel. At trial, however, petitioner introduced a similar chart that lists "1099 Income" from KD Fabricating of $2,999.63. Petitioner explained that the first chart was "incomplete"; he did not explain why. Petitioner testified that KD Fabricating sent out invoices in order to receive payment for sales. He kept track of the invoices, he testified, by copying each invoice and placing it in a "file folder". But petitioner produced no copies of any invoices to actual customers. According to petitioner, customers paid him by check in 2002. Petitioner, however, produced no bank statements or check registers to show receipt of payments from customers. Petitioner did not produce any evidence of any single amount received in payment from a customer. Petitioner's computer-generated record of income did not list customers of KD Fabricating nor their payments; it merely listed the alleged total payments for the year.

When questioned by the Court, petitioner testified that he was indeed aware, before appearing in Court, that respondent was

---

²(...continued)
Petitioner indicated "NO" in response.

challenging the existence of his KD Fabricating business.  Yet, he produced no receipts or any other evidence, other than his own testimony, of any customer payments to KD Fabricating.  The Court is not required to accept petitioner's self-serving testimony, particularly in the absence of corroborating evidence.  See Geiger v. Commissioner, 440 F.2d 688, 689 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Urban Redev. Corp. v. Commissioner, 294 F.2d 328, 332 (4th Cir. 1961), affg. 34 T.C. 845 (1960).  The Court concludes that petitioner has not shown that he was engaged in an activity for profit under the name KD Fabricating in 2002.

Taxpayers are required to maintain records that are sufficient to enable the Commissioner to determine the correct tax liability.  See sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Petitioner's "substantiation" for claimed business expenses consists of computer-generated listings of expenses entitled "cash supplies", "credit card expenses", and  "check schedule". Petitioner produced no original documents or copies of such items as receipts, credit card records, bank statements, or canceled checks, on which his computer records were supposedly based. Petitioner's cash expenditures as listed on his "cash supplies document" totaled $31,468.49.  Included in both the cash and check expenses was the purchase of a new Toyota pickup truck for $23,514.

Petitioner testified that his listings of expenses contained some "leftover" expenses from Welding, some fuel expenses related to KD Technology, and some expenses related to his rental activity. As he failed to segregate his expenses, he was unable to identify the expenses attributable to each activity.

Because petitioner has not shown that he was engaged in an activity for profit under the name of KD Fabricating, has not shown for what purpose the claimed expenses might otherwise be deductible, and if deductible, has not provided proper substantiation, he has not shown that he is entitled to any deductions other than those agreed to by respondent.[3] See Lerch v. Commissioner, 877 F.2d 624, 629 (7th Cir. 1989), affg. T.C. Memo. 1987-295.

Additions to Tax

Respondent bears the burden of production with respect to any addition to tax. Sec. 7491(c). In order to meet this burden, respondent must produce evidence sufficient to establish that it is appropriate to impose the addition to tax. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

Addition to Tax Under Section 6651(a)(1)

The parties agree that petitioner did not file a Federal tax return for 2002. Respondent made a return for petitioner under

---

[3]Petitioner may be entitled to deduct legal fees as discussed supra.

section 6020(b).  A return prepared under section 6020(b) is to be disregarded for purposes of determining the amount of the addition to tax under section 6651(a)(1).  Sec. 6651(g)(1). Respondent has met his burden of production under section 7491(c) with respect to imposing the addition to tax under section 6651(a)(1).

It is petitioner's burden to prove that he had reasonable cause and lacked willful neglect in not filing his return timely. See United States v. Boyle, 469 U.S. 241, 245 (1985); Higbee v. Commissioner, supra; sec. 301.6651-1(a)(1), Proced. & Admin. Regs.  Because petitioner failed to offer any evidence of reasonable cause and lack of willful neglect for his failure to file timely, respondent's determination that he is liable for the addition to tax under section 6651(a)(1) is sustained.

Addition to Tax Under Section 6651(a)(2)

Under section 6651(g)(2), the return made by respondent under section 6020(b) is to be treated as a return filed by petitioner for purposes of determining the amount of the addition to tax under section 6651(a)(2).  Because petitioner failed to offer any evidence of reasonable cause and lack of willful neglect for his failure to pay timely, respondent's determination that he is liable for the addition to tax under section 6651(a)(2) is sustained.

Addition to Tax Under Section 6654

Section 6654 imposes an addition to tax for failure to make timely and sufficient payments for estimated taxes. In order for respondent to satisfy his burden of production under section 7491(c), he must produce evidence necessary to enable the Court to conclude that petitioner had an obligation to make an estimated tax payment. Wheeler v. Commissioner, 127 T.C. 200, 211 (2006). Specifically, respondent must produce evidence showing that petitioner had a "required annual payment" as defined by section 6654(d)(1)(B) for the year at issue. Id.

The section 6654 addition to tax is calculated with reference to four required installment payments of the taxpayer's estimated tax liability. Sec. 6654(c)(1). Each required installment of estimated tax is equal to 25 percent of the "required annual payment". Sec. 6654(d)(1)(A).

Under section 6654(d)(1)(B), "required annual payment" means the lesser of--

> (i) 90 percent of the tax shown on the return for the taxable year (or, if no return is filed, 90 percent of the tax for such year), or

> (ii) 100 percent of the tax shown on the return of the individual for the preceding taxable year.

> Clause (ii) shall not apply if the preceding taxable year was not a taxable year of 12 months or if the individual did not file a return for such preceding taxable year.

Respondent produced a Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for 2002 establishing that petitioner filed for an extension of time to file a tax return for 2002 along with a payment of $1,500. Respondent made a return for petitioner under section 6020(b) reporting a tax liability of $8,877. Such a return is "good and sufficient for all legal purposes." Sec. 6020(b)(2). The evidence is sufficient for the Court to make the analysis required by section 6654(d)(1)(B)(i). Respondent introduced evidence in the form of a Form 4340 for 2001 showing that there is no record that petitioner filed a return for the preceding taxable year (i.e. 2001). Therefore, under the flush language of section 6654(d)(1)(B), clause (ii) does not apply. The Court concludes that petitioner had a required annual payment for 2002.

The section 6654 addition to tax is mandatory unless petitioner can place himself within one of the computational exceptions provided by section 6654(e). Recklitis v. Commissioner, 91 T.C. 874, 913 (1988); Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980). Petitioner did not pay the required estimated tax for 2002 and failed to show that his

failure to timely pay estimated taxes qualifies for one of the exceptions under section 6654(e).  Accordingly, petitioner is liable for the addition to tax under section 6654 for 2002.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.